BNDDUTY,CLOSED

# U.S. District Court
## Southern District of Florida (Ft Lauderdale)
## CRIMINAL DOCKET FOR CASE #: <u>0:26−mj−06378−JMS</u> All Defendants

Case title: USA v. Bianca Vieux

Date Filed: 07/07/2026

Date Terminated: 07/07/2026

Assigned to: Magistrate Judge
Jared M. Strauss

### Defendant (1)

**Bianca Vieux**                             represented by   **Noticing FPD−FTL**
76337−512                                                     (954) 356−7436
*YOB 1992; English*                                          Email: <u>ftl_ecf@fd.org</u>
*TERMINATED: 07/07/2026*                                     *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Designation: Public Defender Appointment*

### Pending Counts                           ### Disposition

None

### Highest Offense Level (Opening)

None

### Terminated Counts                        ### Disposition

None

### Highest Offense Level
### (Terminated)

None

### Complaints                               ### Disposition

18:U.S.C.§1343 CONSPIRACY
TO COMMIT WIRE FRAUD
AND BANK FRAUD;
18:U.S.C.§1344 BANK FRAUD;

### Plaintiff

**USA**                                      represented by   **Brooke Latta**
                                                             U.S. Attorneys Office

1

99 NE 4th Street
Miami, FL 33132
Email: Brooke.Latta@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/07/2026 | 1 | Magistrate Judge Removal of Indictment from Eastern District of New York Case number in the other District 25−cr−271−NCM as to Bianca Vieux (1). (smy) (Main Document 1 replaced on 7/7/2026) (smy). (Entered: 07/07/2026) |
| 07/07/2026 | 2 | NOTICE OF HEARING as to Bianca Vieux Initial Appearance − Rule 5(c)(3)/40 set for 7/7/2026 11:00 AM in Fort Lauderdale Division before FTL Duty Magistrate Judge. (smy) (Entered: 07/07/2026) |
| 07/07/2026 | 3 | **ORE TENUS** MOTION to Unseal Case by USA as to Bianca Vieux. (smy) (Entered: 07/07/2026) |
| 07/07/2026 | 4 | ORDER granting 3 Motion to Unseal Case as to Bianca Vieux (1). Signed by Magistrate Judge Jared M. Strauss on 7/7/2026. *See attached document for full details.* (smy) (Entered: 07/07/2026) |
| 07/07/2026 | 5 | Minute Order for proceedings held before Magistrate Judge Jared M. Strauss: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Bianca Vieux held on 7/7/2026. Bond recommendation/set: Bianca Vieux (1) $200,000 PSB. Date of Arrest or Surrender: 7/7/2026. All further proceedings will be held in the Eastern District of New York. Attorney added: Noticing FPD−FTL for Bianca Vieux (Digital 11:20:54−11:56:12) Signed by Magistrate Judge Jared M. Strauss on 7/7/2026. (rbe) (Entered: 07/07/2026) |
| 07/07/2026 | 6 | WAIVER of Rule 5(c)(3)/Rule 40 Hearing by Bianca Vieux. (rbe) (Entered: 07/07/2026) |
| 07/07/2026 | 7 | $200,000 PSB Bond Entered as to Bianca Vieux Approved by Magistrate Judge Jared M. Strauss. *Please see bond image for conditions of release.* (rbe) (Additional attachment(s) added on 7/7/2026: # 1 Restricted Bond with 7th Page) (rbe). (Entered: 07/07/2026) |
| 07/07/2026 | 8 | **ORE TENUS** MOTION to Appoint Counsel by Bianca Vieux. (rbe) (Entered: 07/07/2026) |
| 07/07/2026 | 9 | **ORE TENUS** MOTION for Bond by USA as to Bianca Vieux. (rbe) (Entered: 07/07/2026) |
| 07/07/2026 | 10 | PAPERLESS ORDER granting 8 Motion to Appoint Counsel as to Bianca Vieux (1). Signed by Magistrate Judge Jared M. Strauss on 7/7/2026. (rbe) (Entered: 07/07/2026) |
| 07/07/2026 | 11 | PAPERLESS ORDER granting 9 Motion for Bond as to Bianca Vieux (1). Signed by Magistrate Judge Jared M. Strauss on 7/7/2026. (rbe) |

| | | (Entered: 07/07/2026) |
|---|---|---|
| 07/07/2026 | 12 | ORDER OF REMOVAL ISSUED to the Eastern District of New York as to Bianca Vieux. Closing Case for Defendant. Signed by Magistrate Judge Jared M. Strauss on 7/7/2026. *See attached document for full details.* (rbe) (Entered: 07/07/2026) |

FILED
IN CLERK'S OFFICE
US DISTRICT COURT
*JUNE 9, 2026*
BROOKLYN OFFICE

FTB:RWN
F. #2025R00133

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

BIANCA VIEUX,
    also known as "B,"

███████████████████████

DESTINY MENDEZ,

███████████████████████

CHRISTOPHER WALKER, and

███████████████████

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

**S U P E R S E D I N G
I N D I C T M E N T**

Cr. No. 25-271 (S-1) (NCM)
(T. 18, U.S.C., §§ 982(a)(1),
982(a)(2)(A), 982(b)(1), 1028(f), 1344,
1349, 1957, 2 and 3551 et seq.; T. 21,
U.S.C., § 853(p))

**OUR CASE NO: 26-6378-MJ-STRAUSS**

FILED BY_____AT_____D.C.

*Jul 7, 2026*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Superseding Indictment, unless otherwise indicated:

### I.    The Defendants and Relevant Individuals and Entities

      1.     The defendant BIANCA VIEUX, also known as "B," was a resident of, at

different times, Queens County, New York and Miami, Florida.

███████████████████████████████████████████████

2



4. The defendant CHRISTOPHER WALKER was a resident of Queens County, New York. WALKER was employed by the New York City Department of Correction as a correction officer at the Rikers Island Correctional Complex ("Rikers Island") beginning in approximately June 2017.

7. The defendant DESTINY MENDEZ was a resident of Kings County, New York.

9. Aaron Warren was a resident of Queens County, New York. Warren was employed by the New York City Department of Correction as a correction officer at Rikers Island from approximately June 2017 to August 2023.

3

10.     Tara Dildy was a resident of Queens County, New York.   Dildy was employed by the New York City Department of Correction as a correction officer at Rikers Island from approximately January 2018 to January 2024.

11.     Individual #1, an individual whose identity is known to the Grand Jury, was a resident of Nassau County, New York.   Individual #1 made payments by check for various purposes.

12.     Bank #1, Bank #2, Bank #3, and Bank #4 (collectively, the "Banks"), entities the identities of which are known to the Grand Jury, were depository institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation.

13.     Credit Union #1 and Credit Union #2 (collectively, the "Credit Unions"), entities the identities of which are known to the Grand Jury, were financial institutions, the accounts of which were insured by the National Credit Union Share Insurance Fund.

14.     Investment Company #1, Investment Company #2, and Investment Company #3 (collectively, the "Investment Companies"), entities the identities of which are known to the Grand Jury, were investment companies that offered brokerage accounts to individual customers.   Each of the Investment Companies offered a check-deposit feature that allowed customers to deposit checks into their brokerage accounts.

15.     Company #1, Company #2, Company #3, Company #4, and Company #5 (collectively, the "Companies"), entities the identities of which are known to the Grand Jury, were entities that made payments by check for various purposes.   Company #1 was a shipping company located in Union City, California.   Company #2 was a non-profit organization that provided services to people with disabilities in New York City.   Company #3 was a bank with branches in the Eastern District of New York and elsewhere.   Company #4 was an insurance-

4

claims business located in New York, New York.   Company #5 was a construction company located in Red Bay, Alabama.

II.      The Falsified-Checks Scheme

16.     Between approximately July 2023 and June 2025, the defendants BIANCA VIEUX, ████████████████ DESTINY MENDEZ, ████████████ ████████████ CHRISTOPHER WALKER, ████████████ and others engaged in a fraudulent scheme to deposit more than $3 million worth of falsified checks purportedly made out by the Companies, Individual #1, the City of New York and other entities into accounts controlled by the defendants at banks, credit unions and investment companies including the Banks, Credit Unions, and Investment Companies.   Where the falsified checks cleared and money was successfully deposited into these accounts, the defendants then withdrew or transferred the fraudulently obtained money from their accounts before the fraud was detected.

17.     As part of the Falsified-Checks Scheme, the defendant BIANCA VIEUX sought out individuals to open bank accounts into which falsified checks could be deposited.   As VIEUX described in text messages sent on approximately May 18, 2025: "You know [slang term for Bank #1] and [Bank #4] that's my playground[.]   100k and better[.]"   As VIEUX described in another text message sent on approximately June 20, 2025: "I never set up a man in my life ! lol I scam the government not human beings I don't steal from people I still [sic] from banks [. . . .]"   The defendants ████████████ DESTINY MENDEZ, ████████████ CHRISTOPHER WALKER, and ████████████ each opened bank accounts at Bank #1 and elsewhere, into which falsified checks were deposited.   Where the deposits were successful, the defendants then withdrew the fraudulently obtained money from these accounts.   As another

Case 0:26-mj-06378-JMS   Document 13   Entered on FLSD Docket 07/07/2026   Page 8 of 48
Case 0:26-mj-06378-JMS   Document 1   Filed 07/07/26   Page 5 of 22

5

part of the Falsified-Checks Scheme, the defendant ███████████ created falsified checks for WALKER in exchange for a fee.

### A. July 18, 2023: Deposit of Falsified Check from Company #1

18. On approximately June 21, 2023, a check bearing check number 128187 in the amount of $119,012.50 was made out by Company #1 to a payee located in Brooklyn, New York. The true name and address of the payee on this check were subsequently falsified to be the name and address of the defendant CHRISTOPHER WALKER.

19. On approximately July 5, 2023, the defendant BIANCA VIEUX sent the defendant CHRISTOPHER WALKER a text message with the name, address, account number, PIN number, and password for an account at Bank #1 with a number ending in 2163 (the "2163 Account"), which belonged to WALKER. On approximately July 18, 2023, the falsified check numbered 128187 was deposited into the 2163 Account.

20. Thereafter, between approximately July 18, 2023 and August 7, 2023, the defendant CHRISTOPHER WALKER and others withdrew more than $116,000 in cash from the 2163 Account. On multiple occasions, cash withdrawals were made from automatic teller machines ("ATMs") in amounts of $3,000 and $1,000, for a total amount of $4,000 per ATM.

21. On approximately August 12, 2023, the defendant BIANCA VIEUX messaged the defendant CHRISTOPHER WALKER: "When you ready to go again lmk ! Respectfully"; "One hand washes the other ! Only looking out for my peoples"; "And if you have other people lmk[.]" Then, on approximately August 14, 2023, VIEUX messaged WALKER: "Ok also to pull the 4k out every morning[,]" consistent with the repeated withdrawals of fraudulently obtained cash from the 2163 Account in amounts of $4,000 per ATM.

6

**B.      December 2023: Deposit of Falsified Check from Company #2**

22.      On approximately August 1, 2023, Aaron Warren sent the defendant BIANCA VIEUX a text message, asking if she could help him in the same way that she helped the defendant CHRISTOPHER WALKER.   VIEUX responded, "Yea absolutely[.]"

23.      On approximately December 1, 2023, a check bearing check number 7416 in the amount of $93,270.38 was made out by Company #2 to a payee located in New York. The true name and address of this payee were subsequently falsified to be the name and address of Aaron Warren.   On approximately December 14, 2023, this falsified check was deposited into an account at Bank #1 with a number ending in 3928 (the "3928 Account"), which belonged to Warren.

24.      Following the fraudulent deposit, between approximately December 26, 2023 and December 29, 2023, Aaron Warren and others withdrew more than $90,000 in cash from the 3928 Account.   On multiple occasions, cash withdrawals were made from ATMs in amounts of $3,000 and $1,000, for a total amount of $4,000 per ATM, consistent with the defendant BIANCA VIEUX's prior instructions to the defendant CHRISTOPHER WALKER and the withdrawals made from the 2163 Account.

**C.      June 2024: Deposits of Falsified Cashier's Checks from Company #3**

25.      Between approximately February 29, 2024 and April 12, 2024, the defendant CHRISTOPHER WALKER, along with Aaron Warren and Tara Dildy, each opened a business-deposit account at Bank #2 at the same branch location in Nassau County, New York.

Case 0:26-mj-06378-JMS   Document 13   Entered on FLSD Docket 07/07/2026   Page 10 of 48
Case 0:26-mj-06378-JMS   Document 1   Filed 07/07/26   Page 7 of 22

7

Falsified checks were then fraudulently presented for deposit into WALKER's and Dildy's business-deposit accounts and into a separate account in Warren's name at Bank #2.

26. Specifically, on or about April 12, 2024, the defendant CHRISTOPHER WALKER opened a business-deposit account at Bank #2 with a number ending in 0044 (the "0044 Account"). WALKER provided the name of the business as "Christopher A.D. Walker" and described his business as a brokerage for selling car parts and used cars with an annual gross revenue of $50,000 and an annual net profit of $5,000.

27. On the same day, at the same branch location, Tara Dildy also opened a business-deposit account at Bank #2, with a number ending in 0087 (the "0087 Account"). Dildy provided the name of the business as "Tara E Dildy" and claimed her business sold hairdressing and beautification services. Like the defendant CHRISTOPHER WALKER, above, Dildy indicated that her business had an annual gross revenue of $50,000 and an annual net profit of $5,000.

28. On approximately June 5, 2024, Aaron Warren purchased a cashier's check bearing serial number 9106686588 from Company #3 that was made payable to "Joe Paul" in the amount of $50.00. The true name of the payee and amount of this check were subsequently falsified to be the defendant CHRISTOPHER WALKER and $96,142.27, respectively.

29. Between approximately June 24, 2024 and June 28, 2024 the defendant CHRISTOPHER WALKER, along with Aaron Warren and Tara Dildy, each presented a falsified cashier's check purportedly issued by Company #3 for deposit into their accounts at Bank #2. Specifically:

8

(a)      on approximately June 24, 2024, what appeared to be a cashier's check issued by Company #3 bearing serial number 9106686588 (the check for $50.00 made payable to "Joe Paul" described in paragraph 28, above), now made payable to the defendant CHRISTOPHER WALKER in the amount of $96,142.27, was presented for deposit into the 0044 Account;

(b)      on approximately June 25, 2024, what appeared to be a cashier's check issued by Company #3 bearing serial number 9106686728, made payable to Tara Dildy in the amount of $96,147.22, was presented for deposit into the 0087 Account;

(c)      on approximately June 28, 2024, what appeared to be a cashier's check issued by Company #3 bearing serial number 9106686889, made payable to Aaron Warren, was presented for deposit into an account at Bank #2 in Warren's name with a number ending in 5915 (the "5915 Account").   While the numerical amount on this check was $28,047.00, the word-written-out amount was "ninety six thousand one hundred forty seven and 22 cents"—the same amount as the falsified check deposited into Tara Dildy's business-deposit account, as described immediately above.

Each of these deposits was rejected.

30.      In addition, a similarly falsified cashier's check purporting to be issued by Company #3 was presented for deposit into an account at Bank #1 with a number ending in 2407 (the "2407 Account"), which belonged to the defendant ███████████████.   Specifically, on approximately July 1, 2024, what appeared to be a cashier's check issued by Company #3 bearing serial number 9106686836, made payable to ████████, was presented for deposit into the 2407 Account.   While the numerical amount on this check was $57,122.00, the word-written-out amount was "ninety six thousand one hundred forty seven and 22 cents"—the same

9

amount listed on the falsified checks deposited into Tara Dildy's and Aaron Warren's respective accounts, as described immediately above.   This deposit, too, was rejected.

D.       April 2024 to October 2024: Deposits of Falsified Checks from Company #4

31.       Between April 2024 and October 2024, the defendants ▮▮▮▮▮▮▮ ▮▮▮▮▮▮ and CHRISTOPHER WALKER, together with Aaron Warren, attempted to deposit at least six different falsified checks purporting to be made out by Company #4.

32.       On approximately April 11, 2024, a check bearing check number 767061 in the amount of $75,000.00 was made out by Company #4 to a payee located in Brooklyn, New York.   The true name and address of the payee on this check were subsequently falsified to be the name and address of the defendant ▮▮▮▮▮▮▮▮▮.   On approximately April 23, 2024, this falsified check was deposited into an account at Bank #1 with a number ending in 8558, which belonged to ▮▮▮▮▮ (the "8558 Account").   Following this deposit, between approximately May 2, 2024 and May 14, 2024, ▮▮▮▮▮ and others withdrew over $43,000 in cash from the 8558 Account, including several ATM withdrawals in amounts of $3,000 and $1,000 per ATM.

33.       This same check number, amount, and payor appeared on another falsified check that was made payable to the defendant CHRISTOPHER WALKER.   On approximately July 17, 2024, a falsified check with the same information as the April 11, 2024 check was deposited into an account at Credit Union #1 with a number ending in 9327, which belonged to WALKER (the "9327 Account").   Following this deposit, on approximately July 26, 2024, (a) $30,500 was wired from this account to an account at Credit Union #2 with a number ending in 1341, which also belonged to WALKER (the "1341 Account"), and (b) an additional $37,400

Case 0:26-mj-06378-JMS   Document 13   Entered on FLSD Docket 07/07/2026   Page 13 of 48
Case 0:26-mj-06378-JMS   Document 1   Filed 07/07/26   Page 10 of 22

10

was wired from the account to an account at Bank #3 with a number ending in 1115, which belonged to Aaron Warren (the "1115 Account").

34.     Between approximately April 15, 2024 and April 26, 2024, at least three more checks were made out by Company #4 to payees in amounts of less than $1,000.   The true names of the payees were subsequently falsified to be the name of the defendant CHRISTOPHER WALKER or the name of Aaron Warren, and the amounts of each of these checks were changed to be $75,000.   Between approximately July 26, 2024 and August 6, 2024, these falsified checks were presented for deposit into accounts that belonged to WALKER and Warren at Investment Company #1, Credit Union #1, and Credit Union #2.   Each of these deposits was rejected.

E.     April to September 2024: Deposits of Falsified Checks from Company #5

35.     Between approximately April 11, 2024 and September 6, 2024, the defendants DESTINY MENDEZ, ███████████████ CHRISTOPHER WALKER, and ███████████████ together with Aaron Warren, attempted to deposit falsified checks purportedly made out by Company #5 into bank accounts that they controlled.

36.     Specifically, on approximately April 11, 2024, the defendant ███████████ opened a business bank account with a number ending in 8678 (the "8678 Account") at a branch of Bank #1 in Glen Burnie, Maryland.   On approximately April 23, 2024, Aaron Warren messaged ██████████, "I have something ready for you , I'm going to start the process with yours today[.]"

37.     On approximately May 1, 2024, what appeared to be a check bearing check number 706164, made out by Company #5 to the defendant ███████████████ in the amount of $91,101.23, was deposited into the 8678 Account.   On approximately May 20, 2024,

11

what appeared to be a check bearing check number 706259, made out by Company #5 to ███████ in the amount of $13,943.20, was deposited into the 8678 Account.   In fact, at that time Company #5 had not made out checks with check numbers 706164 or 706259.

38.     Between approximately May 13, 2024 and May 21, 2024, the defendant ███████████ and others withdrew over $90,000 in cash from the 8678 Account, including several ATM withdrawals in amounts of $3,000 and $1,000 per ATM.

39.     On approximately May 2, 2024, what appeared to be a check bearing check number 706167, made out by Company #5 to the defendant ████████████ in the amount of $78,855.42, was deposited into an account at Bank #1 with a number ending in 6339 (the "6339 Account"), which belonged to ██████.   In fact, at that time Company #5 had not made out a check with check number 706167.

40.     Following this deposit, between approximately May 13, 2024 and May 14, 2024, the defendant ██████████ and others withdrew over $77,000 from the 6339 Account, including several ATM withdrawals in amounts of $3,000 and $1,000 per ATM.

41.     On approximately August 5, 2024, what appeared to be a check made out by Company #5 bearing check number 706724, payable to the defendant CHRISTOPHER WALKER in the amount of $86,788.22, was presented for deposit into an account at Investment Company #1 with a number ending in 0795, which belonged to WALKER.   In fact, Company #5 never made out a check bearing check number 706724, and this deposit was rejected.

42.     On approximately August 7, 2024, what appeared to be a check made out by Company #5 bearing check number 706707, payable to Aaron Warren in the amount of $86,788.22, was presented for deposit into an account at Investment Company #2 ending in 5898

12

(the "5898 Account"), which belonged to Warren.   In fact, Company #5 never made out a check bearing check number 706707, and this deposit was rejected.

43.   On approximately August 24, 2024, what appeared to be a check made out by Company #5 bearing check number 706707—the same false check number previously deposited by Aaron Warren—but now made payable to the defendant CHRISTOPHER WALKER in the same amount of $86,788.22, was presented for deposit into an account belonging to WALKER at Investment Company #3.   This deposit was rejected.

44.   On approximately August 26, 2024, what appeared to be a check made out by Company #5 bearing check number 706707—the same false check number previously presented for deposit into accounts belonging to the defendant CHRISTOPHER WALKER and Aaron Warren as referenced in paragraphs 42 and 43, above—but now made payable to WALKER in the amount of $78,855.42, was deposited into an account at Investment Company #1 with a number ending in 4002 (the "4002 Account"), which belonged to WALKER.   Unlike the two previous attempts, this deposit was accepted and money was credited to WALKER's account.   Thereafter, between approximately September 4, 2024 and September 5, 2024, WALKER transferred $78,900 from the 4002 Account to a separate account that belonged to him, thereby emptying the 4002 Account.

45.   On approximately August 14, 2024, what appeared to be a check made out by Company #5 bearing check number 706729, payable to Aaron Warren in the amount of $78,855.42—the same amount as the false check successfully deposited by the defendant CHRISTOPHER WALKER as referenced in paragraph 44, above—was presented for deposit into the 5898 Account.   In fact, Company #5 never made out a check bearing check number 706729, and this deposit was rejected.

13

46.     Between approximately September 4, 2024 and September 6, 2024, the defendant DESTINY MENDEZ communicated with Aaron Warren by telephone at least six times.   On approximately September 6, 2024, what appeared to be a check made out by Company #5 bearing check number 706926, payable to MENDEZ, also in the amount of $78,855.42, was presented for deposit into an account at Bank #1 with a number ending in 5696, which belonged to MENDEZ.   In fact, Company #5 never made out a check bearing check number 706926, and this deposit was rejected.

F.     October 2024: Deposit of Falsified Check from the City of New York

47.     On or about September 13, 2024, a check bearing check number 57345213 in the amount of $660.68 was made out by the City of New York to a payee who was an employee of the City of New York.   This check bore a reference number corresponding to the payee's employee-identification number, which is a unique number assigned to each employee of the City of New York.   The name of the payee on the check was subsequently falsified to be the name of the defendant DESTINY MENDEZ, the amount was changed to be $18,490.02, and the reference number was rewritten to be the employee-identification number of Aaron Warren. On approximately October 1, 2024 and October 2, 2024, the defendant DESTINY MENDEZ communicated with Warren by telephone at least four times.   On approximately October 2, 2024, this falsified check was presented for deposit into an account at Investment Company #3 with a number ending in 1788, which belonged to MENDEZ.   This deposit was rejected.

G.     January 2025: Deposit of Falsified Check from Individual #1

48.     On approximately January 22, 2025, what appeared to be a check bearing check number 418, made out by Individual #1 to the defendant BIANCA VIEUX in the amount of $75,000.00, was presented for deposit into an account at Bank #4 with a number ending in

Case 0:26-mj-06378-JMS   Document 13   Entered on FLSD Docket 07/07/2026   Page 17 of 48
Case 0:26-mj-06378-JMS   Document 1   Filed 07/07/26   Page 14 of 22

14

8258, which belonged to VIEUX.   Individual #1 had previously made out a check with this check number but had made it payable to a different payee.   This deposit was rejected.

### H.      The Creation of Falsified Checks

49.      As part of the Falsified-Checks Scheme, the defendant ███████ ███████ created falsified checks, including checks purporting to be issued by Company #4 and Company #5, for the defendant CHRISTOPHER WALKER in exchange for a fee.

50.      For example, on approximately April 22, 2025, the defendant CHRISTOPHER WALKER texted the defendant ███████████ photographs of approximately six different checks, including a check purporting to be made out by Company #4 to WALKER, a check purporting to be made out by Company #5 to the defendant ███████ and three checks purporting to be made out by Company #1.   WALKER then messaged ███████: "2 of the shank joints[,]" "So 4 of them in all[,]" "All with the name Christopher Walker[.]"   ███████ responded, "Bet send it I'll have em done n I'll uber it to you[.]"   WALKER then sent $200 to ███████ via Zelle, a mobile payment application. WALKER later sent ███████ additional details for his order: "You doing two us bank joints[,]" "For the 119k[,]" "119,012.50 cents[,]" "Then the one joint for the 75k[,]" "And the other joint for the 78,855.42[.]"

51.      On approximately April 24, 2025, the defendant ███████████ messaged the defendant CHRISTOPHER WALKER, "This how you want it right ?" accompanied by a picture of a computer screen showing a digital image of a check in the Adobe Photoshop editing application.   The check depicted on the screen purported to be issued by Company #5 to WALKER in the amount of $78,855.42.   WALKER responded, "Yes[.]   That's it[.]"

15

### III.   The Production of Counterfeit Social Security Cards

52.   From approximately October 2024 to December 2024, the defendant ▮▮▮▮▮▮▮▮▮▮ created counterfeit United States Social Security cards for the defendant CHRISTOPHER WALKER in exchange for a fee.

53.   Specifically, on approximately October 12, 2024, the defendant CHRISTOPHER WALKER messaged the defendant ▮▮▮▮▮▮▮▮▮▮ that he needed help with "the ss", and ▮▮▮▮▮ answered with a price list: "Bet physical with uv is 140[,] Physical without uv is 100[,] Pic of front & back signed is 70[.]" ▮▮▮▮▮ then sent WALKER a series of pictures and videos showing Social Security cards bearing the names of other individuals, including one video depicting a Social Security card in the name of ▮▮▮▮▮▮▮▮▮ on which a watermark bearing the logo of the Social Security Administration was illuminated with an ultraviolet light.

54.   The same day, October 12, 2024, the defendant CHRISTOPHER WALKER asked the defendant ▮▮▮▮▮▮▮▮▮▮ for a Social Security card with a particular name ("Alias-1") and a Social Security number that WALKER said he was inventing. Approximately 20 minutes later, ▮▮▮▮▮ sent WALKER pictures of the front and back of a counterfeit Social Security card with the name Alias-1 and the Social Security number that WALKER had created.   WALKER told ▮▮▮▮▮ that he would use Uber's package delivery service to pick the card up.   Approximately 50 minutes later, ▮▮▮▮▮ confirmed, "Its in it[,]" "Otw to you[.]"   Later that day, WALKER messaged ▮▮▮▮▮ "Got it bro good looks[.]"

55.   On approximately October 30, 2024, the defendant CHRISTOPHER WALKER messaged the defendant ▮▮▮▮▮▮▮▮▮ asking for "3[.]" ▮▮▮▮▮ answered, "All with uv ?" and told WALKER it would cost $420.   The same day, WALKER sent $420 via

16

Apple Pay to an account controlled by ███████.   WALKER then sent ██████ his own name and two other names ("Alias-2" and "Alias-3").   Shortly thereafter, ██████ sent WALKER pictures showing the front and back of three counterfeit Social Security cards bearing those three names.   In approximately September 2025, pursuant to a judicially-authorized search warrant, law enforcement officers conducted a search of WALKER's residence and located these three counterfeit Social Security cards in an envelope behind the bed in WALKER's bedroom.

56.   The defendants CHRISTOPHER WALKER and ████████████ explicitly discussed the fraudulent nature of their counterfeit Social Security cards.   On approximately December 4, 2024, WALKER offered to pick up a Social Security card that he had previously ordered in the name of another individual, and ██████ told WALKER that he had shredded it.   ██████ continued, "You can[']t be expecting me to hold on to fraudulent federal documents gang lol[.]"   WALKER responded, "lol nah you right you right that's my fault I was mad busy schedules wasn't linking up[.]"

## COUNT ONE
(Conspiracy to Commit Wire Fraud and Bank Fraud)

57.   The allegations contained in paragraphs one through 56 are realleged and incorporated as if fully set forth in this paragraph.

58.   In or about and between July 2023 and June 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants BIANCA VIEUX, ████████████████████ DESTINY MENDEZ, ███████ ████████████████████████ CHRISTOPHER WALKER, and ████████████ together with others, did knowingly and intentionally conspire to:

(a)   devise a scheme and artifice to defraud victims including Bank #1, Bank #2, Bank #3, Bank #4, Investment Company #1, Investment Company #2, Investment

17

Company #3, Credit Union #1, and Credit Union #2, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343; and

(b)    execute a scheme and artifice to defraud Bank #1, Bank #2, Bank #3 and Bank #4, financial institutions the deposits of which were insured by the Federal Deposit Insurance Corporation; and Credit Union #1 and Credit Union #2, financial institutions the accounts of which were insured by the National Credit Union Share Insurance Fund, and to obtain moneys, funds, credits and other property owned by and under the custody and control of Bank #1, Bank #2, Bank #3, Bank #4, Credit Union #1, and Credit Union #2 by means of materially false and fraudulent pretenses, representations and promises, contrary to Title 18, United States Code, Section 1344.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNTS TWO THROUGH NINE
(Bank Fraud)

61.    The allegations contained in paragraphs one through 56 are realleged and incorporated as if fully set forth in this paragraph.

62.    On or about and between the dates set forth below, such dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants set forth below, together with others, did knowingly and intentionally execute and attempt to execute a scheme and artifice to defraud the financial institutions set forth below, the deposits of which were insured by the Federal Deposit Insurance Corporation and the National Credit Union Share Insurance Fund, and to obtain moneys, funds, credits and other property

18

owned by and under the custody and control of said financial institutions by means of materially false and fraudulent pretenses, representations and promises.

| Count | Approximate Dates | Financial Institution | Defendant(s) | Amount |
|---|---|---|---|---|
| TWO | July 5, 2023 through August 7, 2023 | Bank #1 | CHRISTOPHER WALKER | $119,012.50 |
| THREE | February 29, 2024 through June 28, 2024 | Bank #2 | CHRISTOPHER WALKER | $96,142.27 |
| FOUR | April 23, 2024 through July 1, 2024 | Bank #1 | █████████ | $146,122.00 |
| FIVE | May 1, 2024 through May 21, 2024 | Bank #1 | █████████ | $105,044.43 |
| SIX | May 2, 2024 through May 14, 2024 | Bank #1 | █████████ | $78,855.42 |
| SEVEN | July 17, 2024 through August 1, 2024 | Credit Union #1 | CHRISTOPHER WALKER | $75,000.00 |
| EIGHT | September 6, 2024 | Bank #1 | DESTINY MENDEZ | $78,855.42 |
| NINE | January 22, 2025 | Bank #4 | BIANCA VIEUX | $75,000.00 |

(Title 18, United States Code, Sections 1344, 2 and 3551 et seq.)

COUNTS TEN THROUGH FOURTEEN
(Money Laundering)

63.     The allegations contained in paragraphs one through 56 are realleged and incorporated as if fully set forth in this paragraph.

64.     On or about the following dates, within the Eastern District of New York and elsewhere, the defendants ███████████████ CHRISTOPHER WALKER, and ███████████████ together with others, did knowingly and intentionally engage in the monetary transactions set forth below, in and effecting interstate commerce, in criminally derived property that was of a value greater than $10,000 and was derived from specified unlawful activity, to wit: wire fraud and bank fraud, contrary to Title 18, United States Code,

Case 0:26-mj-06378-JMS   Document 13   Entered on FLSD Docket 07/07/2026   Page 22 of 48
Case 0:26-mj-06378-JMS   Document 1   Filed 07/07/26   Page 19 of 22

19

Sections 1343 and 1344, respectively, knowing that the property involved in such monetary transactions represented the proceeds of some form of unlawful activity:

| Count | Approximate Date | Defendant(s) | Monetary Transaction |
|---|---|---|---|
| TEN | May 13, 2024 | ███████ | Withdrawal of $20,000 of fraudulently obtained funds from the 6339 Account |
| ELEVEN | May 16, 2024 | ███████ | Withdrawal of $20,000 of fraudulently obtained funds from the 8678 Account |
| TWELVE | July 26, 2024 | CHRISTOPHER WALKER | Transfer of $30,500 of fraudulently obtained funds from the 9327 Account to the 1341 Account |
| THIRTEEN | July 26, 2024 | CHRISTOPHER WALKER | Transfer of $37,400 of fraudulently obtained funds from the 9327 Account to the 1115 Account |
| FOURTEEN | September 4, 2024 | CHRISTOPHER WALKER | Transfer of $78,000 of fraudulently obtained funds from the 4002 Account to the 1341 Account |

(Title 18, United States Code, Sections 1957, 2 and 3551 et seq.)

COUNT FIFTEEN
(Conspiracy to Commit Identification Documents Fraud)

65.    The allegations contained in paragraphs one through 56 are realleged and incorporated as if fully set forth in this paragraph.

66.    In or about and between October 2024 and September 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ███████████ and CHRISTOPHER WALKER, together with others, did knowingly and intentionally conspire to produce without lawful authority one or more identification documents, authentication features and false identifications, to wit: counterfeit

20

United States Social Security cards, that appeared to be issued by and under the authority of the United States, contrary to Title 18, United States Code, Section 1028(a)(1).

(Title 18, United States Code, Sections 1028(f) and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH NINE

67.     The United States hereby gives notice to the defendants charged in Counts One Through Nine that, upon their conviction of such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2)(A), which requires any person convicted of such offenses to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

68.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2)(A) and 982(b)(1); Title 21, United States Code, Section 853(p))

Case 0:26-mj-06378-JMS   Document 13   Entered on FLSD Docket 07/07/2026   Page 24 of 48
Case 0:26-mj-06378-JMS   Document 1   Filed 07/07/26   Page 21 of 22

21

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS TEN THROUGH FOURTEEN

69.    The United States hereby gives notice to the defendants charged in Counts Ten through Fourteen that, upon their conviction of such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

70.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

22

property of the defendants up to the value of the forfeitable property described in this forfeiture

allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United

States Code, Section 853(p))

A TRUE BILL

FOREPERSON

By David Pitluck, Assistant U.S. Attorney
JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Magistrate Judge Jared M. Strauss (strauss@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:26879262@flsd.uscourts.gov
Subject:Activity in Case 26-6378 Sealed v. Sealed (Redacted Notice)
```
Content−Type: text/html

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 7/7/2026 at 9:39 AM EDT and filed on 7/7/2026

| | |
|---|---|
| **Case Name:** | USA v. SEALED |
| **Case Number:** | <u>0:26−mj−06378−JMS *SEALED*</u> |
| **Filer:** | |
| **Document Number:** | 2(No document attached) |

**Docket Text:**
 **NOTICE OF HEARING as to Bianca Vieux Initial Appearance − Rule 5(c)(3)/40 set for 7/7/2026 11:00 AM in Fort Lauderdale Division before FTL Duty Magistrate Judge. (smy)**


**0:26−mj−06378−JMS *SEALED*−1** No electronic public notice will be sent because the case/entry is sealed.

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Magistrate Judge Jared M. Strauss (strauss@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:26880879@flsd.uscourts.gov
Subject:Activity in Case 26-6378 Sealed v. Sealed (Redacted Notice)
```
Content−Type: text/html

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 7/7/2026 at 12:52 PM EDT and filed on 7/7/2026

| | |
|---|---|
| **Case Name:** | USA v. SEALED |
| **Case Number:** | 0:26−mj−06378−JMS *SEALED* |
| **Filer:** | USA |
| **Document Number:** | 3(No document attached) |

**Docket Text:**
 **ORE TENUS MOTION to Unseal Case by USA as to Bianca Vieux. (smy)**


**0:26−mj−06378−JMS *SEALED*−1 No electronic public notice will be sent because the case/entry is sealed.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA
Plaintiff

vs                                          Case No: 26-6378-STRAUSS

BIANCA VIEUX,

Defendant

**O R D E R**

FILED BY_____D.C.

JUL 0 7 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

THIS CAUSE is before the Court for the **INITIAL APPEARANCE** of the above-named

defendant(s) on a **SEALED INDICTMENT** filed in the **Eastern District of New York**.

UPON ORAL motion of the government in open court that the case be unsealed, it is

hereby:

ORDERED AND ADJUDGED that the **SEALED INDICTMENT** filed in the **Eastern**

**District of New York** be **unsealed** as to **THIS DEFENDANT only**.

DONE AND ORDERED at Fort Lauderdale, Florida this 7th day of JULY, 2026.

JARED M. STRAUSS
UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record

**UNITED STATES DISTRICT COURT FOR SOUTHERN DISTRICT OF FLORIDA \*\*COURT ORDER/MINUTES\*\***

**U.S. MAGISTRATE JUDGE JARED M. STRAUSS- FORT LAUDERDALE, FLORIDA (110)**

DEFT: **BIANCA VIEUX (J)#**

CASE NO: **26-6378-STRAUSS**

AUSA: **B. LATTA**

ATTY:

USPO:

VIOL: **18:U.S.C.§1349, 1344**

PROCEEDING: **INITIAL APPEARANCE ON A REMOVAL FROM ED/NY**

RECOMMENDED BOND:

BOND/PTD HEARING HELD - yes / no

COUNSEL APPOINTED: **FPD: WESLEY WALLACE PRESENT**

BOND SET @: **$200,000 PSB DEFT RELEASED**

To be cosigned by: **FAMILY MEMBER 72 HRS TO SIGN**

☐ All standard conditions

☐ Do not encumber   property.

☐ Surrender and / or do not obtain passports / travel documents.

☐ Rpt to PTS as directed /   or_ x=s a week/month by phone; _ x=s a week/month in person.

☐ Random   urine testing by Pretrial Services. Treatment as deemed necessary.

☐ Maintain or seek full - time employment.

☐ No contact with victims / witnesses.

☐ No firearms.

☐ Electronic Monitoring:

☐ Travel extended to:

☐ Other:

**DEFENDANT PRESENT IN COURT. GOVT MOVES TO**

**UNSEAL INDICTMENT FILED IN ED/NY. ORE TENUS**

**MOTION GRANTED. ORDER SIGNED. ADVISED OF**

**CHARGES. SWORN/TEST FOR COURT APPOINTMENT**

**COUNSEL. ORE TENUS MOTION GRANTED. FPD**

**APPOINTED. GOVERNMENT ORE TENUS MOTION FOR**

**BOND IS GRANTED. COURT SETS BOND OF $200,000 PSB**

**DEFENDANT WAIVED REMOVAL/IDENTITY HEARING**

**SIGNED WAIVER. ORDER OF REMOVAL SIGNED.**

**ALL FURTHER PROCEEDINGS WILL BE IN ED/NY**

| NEXT COURT APPEARANCE: | DATE: | TIME: | JUDGE: | PLACE: |
|---|---|---|---|---|

REPORT   RE COUNSEL:

**PTD**/**PRELIM HEARING**:

**ARRAIGN** OR **REMOVAL**:

**PROB CAUSE HEARING**

**07/07/26**   TIME: **11:00 AM**   FTL/TAPE/# JMS-   Begin **110**

**[35 MINUTES] \*\*\* RECORDED IN ROOM 110 COURTROOM\*\***
**\*\*\*THE TIME FROM TODAY THROUGH THE RE-SCHEDULED DATE IS EXCLUDED FROM THE DEADLINE FOR TRIAL AS COMPUTED UNDER THE SPEEDY TRIAL ACT \*\*\* (YES OR** NO) **DAR: 11:20:54-11:56:12**

# UNITED STATES DISTRICT COURT
## FOR THE

### SOUTHERN DISTRICT OF FLORIDA

Our Case No: **26-6378-MJ-JMS**
Your Case No: **25-CR-271-NCM**

**UNITED STATES OF AMERICA**

vs                         **WAIVER OF REMOVAL/IDENTITY HEARING**

**BIANCA VIEUX**

I , **Bianca Vieux** charged in a proceeding on a **Sealed Indictment filed in the Eastern District of New York in Violation of 18:U.S.C.§1349 Conspiracy To Commit Wire Fraud and Bank Fraud and 1344 Bank Fraud and** having been arrested in the **Southern District of Florida (Fort Lauderdale)** and taken before **United States Magistrate Judge Jared M. Strauss** for that district, who informed me of the charge and of my right to retain counsel or request the assignment of counsel if I am unable to retain counsel, and to have a removal hearing or execute a waiver thereof, do hereby waive a hearing before the aforementioned Magistrate Judge and consent to the issuance of a Warrant for my Removal to the **Eastern District of New York** where the aforesaid charge is pending against me.

**Tuesday   July   07,   2026**

X _____
Signature of defendant

..................................................
**Jared M. Strauss**
**United States Magistrate Judge (07/07/2026)**

cc: All Counsel

61  Revised 03/2025

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

APPEARANCE BOND: *200,000 PSB*

### CASE NO.: 26-6378-MJ-STRAUSS

UNITED STATES OF AMERICA:

    Plaintiff,

vs.

            USM #:76337-512

BIANCA VIEUX

    Defendant,

I, the undersigned defendant and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of

$ *200,000 PSB*   **STANDARD CONDITIONS OF BOND**   *{ FAMILY MEMBER BY July 10, 2026 }*

✓**The conditions of this bond are that the defendant:** Shall appear before this Court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this Court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case. In no event may a defendant assume that his or her case has been dismissed unless the Court has entered an order of dismissal. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the Court shall order otherwise.

✓1.  May not travel outside the Southern District of Florida unless otherwise approved by the Court prior to any such travel. The Southern District of Florida consists of the following counties: Broward, Highlands, Indian River, Martin, Miami-Dade, Monroe, Okeechobee, Palm Beach and St. Lucie.

✓2.  May not change his/her present address without prior notification and approval from the U.S. Probation Officer or the Court.

✓3.  Must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135a.

✓4.  Must not violate any federal, state or local law while on release in this case. Should the defendant come in contact with law enforcement he/she shall notify the U.S. Probation Officer within 72 hours.

31

DEFENDANT: B. VIEUX
CASE NUMBER: 26-6378-MJ-JMS
PAGE TWO

## SPECIAL CONDITIONS OF BOND

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

*72 hrs TO SURRENDER PASSPORT*

✓ a. Surrender all passports and travel documents, if any, to Pretrial Services and not obtain any travel documents during the pendency of the case;

✓ b. Report to Pretrial Services as follows: ( ) as directed or ___ time(s) a week in person and ___ time(s) a week by telephone;

✓ c. Submit to substance abuse testing and/or treatment, contribute to the cost of services rendered based on ability to pay, as determined by the U.S. Probation Officer;

d. Refrain from ___ excessive OR ___ abstain from alcohol use or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802), without a prescription by a licensed medical practitioner;

e. Participate in a mental health assessment and/or treatment and contribute to the costs of services rendered based on ability to pay, as determined by the U.S. Probation Officer;

✓ f. Employment restriction(s): _____

✓ g. Maintain or actively seek full-time employment;

h. Maintain or begin an educational program;

✓ i. Avoid all contact with victims or witnesses to the crimes charged, except through counsel. The AUSA shall provide defense counsel and pretrial services with the names of all victims or witnesses. The prohibition against contact does not take effect until defense counsel receives the list. The prohibition against contact applies only to those persons on the list, but the prosecutor may expand the list by sending written notice to defense counsel and pretrial services.;

✓ j. Avoid all contact with co-defendants and defendants in related cases, except through counsel;

✓ k. Refrain from possessing a firearm, destructive device or other dangerous weapons and shall surrender (if any), their concealed weapons permit to the U.S. Probation Office;

✓ l. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any real property they own, until the bond is discharged, or otherwise modified by the Court;

m. May not visit commercial transportation establishment: airports, seaport/marinas, commercial bus terminals, train stations, etc.;

n. Defendant shall consent to the U.S. Probation Officer conducting periodic unannounced examinations of the defendant's computer equipment at his/her place of employment or on the computer at his/her residence which may include retrieval and copying of all data from the computer(s) and any internal or external peripherals to ensure compliance with this condition and/or removal of such equipment for the purpose of conducting a more thorough inspection; and consent at the direction of the U.S. Probation Officer to have installed on the defendant's computer(s), at the defendant's expense, any hardware or software systems to monitor the defendant's computer use;

DEFENDANT: B. VIEUX
CASENUMBER:26-6378-MJ-JMS
PAGE THREE

_ o. **LOCATION MONITORING PROGRAM:** The defendant shall participate in the location monitoring program and comply with the requirements, as directed in subsections i, ii, and iii.

i) Following the location restriction component (**check one**):

_ (1) **Curfew.** You are restricted to your residence every day (_) from _____ to _____, or (_) as directed by the supervising officer; or

_ (2) **Home Detention.** You are restricted to your residence at all times except employment; education; religious services; medical, substance use, or mental health treatment; attorney visits; court appearances; court-ordered obligations; activities approved by the court; or essential activities approved in advance by the supervising officer; or

_ (3) **Home Incarceration.** You are restricted to 24-hour-a-day lockdown at your residence except for medical necessities and court appearances or activities specifically approved by the court.

_ (4) **Stand-Alone Monitoring.** You have no residential component (curfew, home detention, or home incarceration) restriction. However, you must comply with the location or travel restrictions as imposed by the court. **Note:** Stand-alone monitoring should be used in conjunction with global positioning system (GPS) or virtual mobile application technology.

ii) Submit to the following location monitoring technology (**check one**):

__ (1) Location monitoring technology as directed by the supervising officer; or

__ (2) GPS; or

__ (3) Radio Frequency; or

__ (4) Voice Recognition; or

_ (5) Virtual Mobile Application. You must allow pretrial serviced or supervising officer to conduct initial and periodic inspection of the mobile devise and mobile application verify that 1) the monitoring software is functional, 2) the required configurations (e.g., location services) are unaltered, and 3) no efforts have been made to alter the mobile application.

iii) (_) pay all or part of the cost of the location monitoring, including equipment loss or damage, based upon your ability to pay, as determined by the supervising officer

— p. **RESIDENTIAL RE-ENTRY CENTER:** The defendant shall reside at a residential re-entry center or halfway house and abide by all the rules and regulations of the program. The cost to be paid by ( )Pretrial Services or ( ) based on the defendant's ability to pay. You are restricted to the residential re-entry center/halfway house at all times except for:

( ) employment

( ) education

( ) religious services

( ) medical, substance abuse, or mental health treatment

( ) attorney visits

( ) court appearances

( ) court ordered obligations

( ) reporting to Pretrial Services

( ) other _____

DEFENDANT: B. VIEUX
CASE NUMBER: 26-6378-MJ-JMS
PAGE FOUR

___ q. Third-Party Custody: _____ will serve as a third-party custodian and will report any violations of the release conditions to the U.S. Probation Officer. Failure to comply with these requirements, the third-party custodian can be subject to the provisions of 18 U.S.C. § 401, Contempt of Court.

___ r. The defendant shall submit his person, property, residence, vehicle, papers, computers, (as defined in 18 U.S.C. 1030(e)(1)), other electronic communication or data storage devices or media, or office, to a search conducted by a United States Probation Officer. The defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search must be conducted at a reasonable time and in a reasonable manner.

___ s. **Mandatory Adam Walsh Conditions:** Defendant shall abide by specified restrictions on personal associations, place of abode, or travel, to avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense; report on a regular basis to a designated law enforcement agency, pretrial services agency or other agency; comply with a specified curfew (with electronic monitoring) and refrain from possessing a firearm, destructive device or other dangerous weapons.

___ t. Additional Sex Offense Conditions for Defendants Charged or Convicted of a Sexual Offense:

1. ( ) Defendant may not have contact with victim(s), or any child under the age of 18, unless approved by the Court or allowed by the U.S. Probation Officer.
2. ( ) The defendant shall not possess or use any data encryption technique or program and shall provide passwords and administrative rights to the U.S. Probation Officer.
3. ( ) Defendant shall participate in specialized sex offender evaluation and treatment, if necessary, and to contribute to the costs of services rendered based on ability to pay, as determined by the U.S. Probation Office.
4. ( ) Defendant shall not possess, procure, purchase or otherwise obtain any internet capable device and/or computer. Additionally, the defendant is prohibited from using another individual's computer or device that has internet capability.
5. ( ) Defendant is prohibited from establishing or maintaining any email account or social media account. Additionally, the defendant is prohibited from using another individual's email account or social media account. Must provide monthly or upon request, personal phone and credit card billings to Pretrial Services to confirm there are no services with any internet services provider.
6. ( ) Defendant is not permitted to enter places where children congregate including, but not limited to any play areas, playgrounds, libraries, children-themed restaurants, daycares, schools, amusement parks, carnivals/fairs, unless approved by the U.S. Probation Officer.
7. ( ) The defendant shall not be involved in any children's or youth organizations.
8. ( ) Defendant is prohibited from viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services.
9. ( ) The defendant shall participate in a maintenance polygraph examination to periodically investigate the defendant's compliance. The polygraph examination shall specifically address only defendant's compliance or non-compliance with the special conditions of release and shall not inquire into the facts of the pending criminal case against defendant. The defendant will contribute to the costs of services rendered (co-payment) based on ability to pay or availability of third party payment.

✓ u. May travel to and from: ED/NY  SD/NY , and must notify Pretrial Services of travel plans before leaving and upon return. SD/FL

✓ v. Comply with the following additional conditions of bond: Continue to Reside At Current ADDRESS. NO NEW LINE OF CREDIT OR BANK ACCOUNTS Without PERMISSION OF PRETRIAL SERVICES

34

DEFENDANT: B. VIEUX
CASE NUMBER: 26-6378-MJ-JMS
PAGE FIVE

## PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, and order of detention, as provided in 18 U.S.C. §3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. §401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. §1503 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. §1510 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. §1512 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. §1513 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. §3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

DEFENDANT: B. VIEUX

CASE NUMBER: 26-6378-MJ-JMS

PAGE SIX

## PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

## SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of seven pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

### DEFENDANT

Signed this_____ day of _____ , 20____ at _____ , Florida

Signed and acknowledged before me:     DEFENDANT: (Signature) _____

WITNESS: _____     _Lauderthill_                    _Florida_

_____   _____              City                    State
City                 State

### CORPORATE SURETY

Signed this_____ day of _____ , 20____ at _____ , Florida

SURETY: _____              AGENT: (Signature) _____

_____   _____              PRINT NAME: _____
City                 State

### INDIVIDUAL SURETIES

Signed this __ day of _____ , 20__ at _____ , Florida   Signed this __ day of _____ , 20__ at _____ , Florida

SURETY: (Signature) _____     SURETY: (Signature) _____

PRINT NAME: _____     PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____     RELATIONSHIP TO DEFENDANT: _____

_____   _____     _____   _____
City                 State              City                 State

Signed this __ day of _____ , 20__ at _____ , Florida   Signed this __ day of _____ , 20__ at _____ , Florida

SURETY: (Signature) _____     SURETY: (Signature) _____

PRINT NAME: _____     PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____     RELATIONSHIP TO DEFENDANT: _____

_____   _____     _____   _____
City                 State              City                 State

### APPROVAL BY THE COURT

Date:   0 7 / 0 7 / 2 0 2 6 ___

JARED M. STRAUSS

UNITED STATES MAGISTRATE JUDGE

61  Revised 03/2025

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**APPEARANCE BOND:** *200,000 PSB*

### CASE NO.: 26-6378-MJ-STRAUSS

UNITED STATES OF AMERICA:

> Plaintiff,

vs.

USM #:76337-512

BIANCA VIEUX

> Defendant,

I, the undersigned defendant and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of

$ *200,000 PSB*   **STANDARD CONDITIONS OF BOND**   { *FAMILY MEMBER BY July 10, 2026* }

✓**The conditions of this bond are that the defendant:** Shall appear before this Court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this Court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case. In no event may a defendant assume that his or her case has been dismissed unless the Court has entered an order of dismissal. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the Court shall order otherwise.

✓1.  May not travel outside the Southern District of Florida unless otherwise approved by the Court prior to any such travel. The Southern District of Florida consists of the following counties: Broward, Highlands, Indian River, Martin, Miami-Dade, Monroe, Okeechobee, Palm Beach and St. Lucie.

✓2.  May not change his/her present address without prior notification and approval from the U.S. Probation Officer or the Court.

✓3.  Must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135a.

✓4.  Must not violate any federal, state or local law while on release in this case. Should the defendant come in contact with law enforcement he/she shall notify the U.S. Probation Officer within 72 hours.

DEFENDANT: B. VIEUX
CASE NUMBER: 26-6378-MJ-JMS
PAGE TWO

## SPECIAL CONDITIONS OF BOND

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

*72 hrs To Surrender Passport*

✓ a. Surrender all passports and travel documents, if any, to Pretrial Services and not obtain any travel documents during the pendency of the case;

✓ b. Report to Pretrial Services as follows: ( ) as directed or __ time(s) a week in person and __ time(s) a week by telephone;

✓ c. Submit to substance abuse testing and/or treatment, contribute to the cost of services rendered based on ability to pay, as determined by the U.S. Probation Officer;

d. Refrain from ____ excessive OR ____ abstain from alcohol use or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802), without a prescription by a licensed medical practitioner;

e. Participate in a mental health assessment and/or treatment and contribute to the costs of services rendered based on ability to pay, as determined by the U.S. Probation Officer;

✓ f. Employment restriction(s): _____

✓ g. Maintain or actively seek full-time employment;

h. Maintain or begin an educational program;

✓ i. Avoid all contact with victims or witnesses to the crimes charged, except through counsel. The AUSA shall provide defense counsel and pretrial services with the names of all victims or witnesses. The prohibition against contact does not take effect until defense counsel receives the list. The prohibition against contact applies only to those persons on the list, but the prosecutor may expand the list by sending written notice to defense counsel and pretrial services.;

✓ j. Avoid all contact with co-defendants and defendants in related cases, except through counsel;

✓ k. Refrain from possessing a firearm, destructive device or other dangerous weapons and shall surrender (if any), their concealed weapons permit to the U.S. Probation Office;

✓ l. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any real property they own, until the bond is discharged, or otherwise modified by the Court;

m. May not visit commercial transportation establishment: airports, seaport/marinas, commercial bus terminals, train stations, etc.;

n. Defendant shall consent to the U.S. Probation Officer conducting periodic unannounced examinations of the defendant's computer equipment at his/her place of employment or on the computer at his/her residence which may include retrieval and copying of all data from the computer(s) and any internal or external peripherals to ensure compliance with this condition and/or removal of such equipment for the purpose of conducting a more thorough inspection; and consent at the direction of the U.S. Probation Officer to have installed on the defendant's computer(s), at the defendant's expense, any hardware or software systems to monitor the defendant's computer use;

DEFENDANT: B. VIEUX
CASENUMBER:26-6378-MJ-JMS
PAGE THREE

__ o. **LOCATION MONITORING PROGRAM:** The defendant shall participate in the location monitoring program and comply with the requirements, as directed in subsections i, ii, and iii.

i)  Following the location restriction component (**check one**):
__ (1) **Curfew.** You are restricted to your residence every day (__) from _____ to _____, or (__) as directed by the supervising officer; or

__ (2) **Home Detention.** You are restricted to your residence at all times except employment; education; religious services; medical, substance use, or mental health treatment; attorney visits; court appearances; court-ordered obligations; activities approved by the court; or essential activities approved in advance by the supervising officer; or

__ (3) **Home Incarceration.** You are restricted to 24-hour-a-day lockdown at your residence except for medical necessities and court appearances or activities specifically approved by the court.

__ (4) **Stand-Alone Monitoring.** You have no residential component (curfew, home detention, or home incarceration) restriction. However, you must comply with the location or travel restrictions as imposed by the court. **Note:** Stand-alone monitoring should be used in conjunction with global positioning system (GPS) or virtual mobile application technology.

ii)  Submit to the following location monitoring technology (**check one**):
__ (1) Location monitoring technology as directed by the supervising officer; or
__ (2) GPS; or
__ (3) Radio Frequency; or
__ (4) Voice Recognition; or
__ (5) Virtual Mobile Application. You must allow pretrial serviced or supervising officer to conduct initial and periodic inspection of the mobile devise and mobile application verify that 1) the monitoring software is functional, 2) the required configurations (e.g., location services) are unaltered, and 3) no efforts have been made to alter the mobile application.

iii)  (__) pay all or part of the cost of the location monitoring, including equipment loss or damage, based upon your ability to pay, as determined by the supervising officer

— p. **RESIDENTIAL RE-ENTRY CENTER:** The defendant shall reside at a residential re-entry center or halfway house and abide by all the rules and regulations of the program. The cost to be paid by ( )Pretrial Services or ( ) based on the defendant's ability to pay. You are restricted to the residential re-entry center/halfway house at all times except for:
( ) employment
( ) education
( ) religious services
( ) medical, substance abuse, or mental health treatment
( ) attorney visits
( ) court appearances
( ) court ordered obligations
( ) reporting to Pretrial Services
( ) other _____

DEFENDANT: B. VIEUX
CASE NUMBER: 26-6378-MJ-JMS
PAGE FOUR

___ q. Third-Party Custody: _____will serve as a third-party custodian and will report any violations of the release conditions to the U.S. Probation Officer. Failure to comply with these requirements, the third-party custodian can be subject to the provisions of 18 U.S.C. § 401, Contempt of Court.

___ r. The defendant shall submit his person, property, residence, vehicle, papers, computers, (as defined in 18 U.S.C. 1030(e)(1)), other electronic communication or data storage devices or media, or office, to a search conducted by a United States Probation Officer. The defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search must be conducted at a reasonable time and in a reasonable manner.

___ s. **Mandatory Adam Walsh Conditions:** Defendant shall abide by specified restrictions on personal associations, place of abode, or travel, to avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense; report on a regular basis to a designated law enforcement agency, pretrial services agency or other agency; comply with a specified curfew (with electronic monitoring) and refrain from possessing a firearm, destructive device or other dangerous weapons.

___ t. Additional Sex Offense Conditions for Defendants Charged or Convicted of a Sexual Offense:

1. (  ) Defendant may not have contact with victim(s), or any child under the age of 18, unless approved by the Court or allowed by the U.S. Probation Officer.
2. (  ) The defendant shall not possess or use any data encryption technique or program and shall provide passwords and administrative rights to the U.S. Probation Officer.
3. (  ) Defendant shall participate in specialized sex offender evaluation and treatment, if necessary, and to contribute to the costs of services rendered based on ability to pay, as determined by the U.S. Probation Office.
4. (  ) Defendant shall not possess, procure, purchase or otherwise obtain any internet capable device and/or computer. Additionally, the defendant is prohibited from using another individual's computer or device that has internet capability.
5. (  ) Defendant is prohibited from establishing or maintaining any email account or social media account. Additionally, the defendant is prohibited from using another individual's email account or social media account. Must provide monthly or upon request, personal phone and credit card billings to Pretrial Services to confirm there are no services with any internet services provider.
6. (  ) Defendant is not permitted to enter places where children congregate including, but not limited to any play areas, playgrounds, libraries, children-themed restaurants, daycares, schools, amusement parks, carnivals/fairs, unless approved by the U.S. Probation Officer.
7. (  ) The defendant shall not be involved in any children's or youth organizations.
8. (  ) Defendant is prohibited from viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services.
9. (  ) The defendant shall participate in a maintenance polygraph examination to periodically investigate the defendant's compliance. The polygraph examination shall specifically address only defendant's compliance or non-compliance with the special conditions of release and shall not inquire into the facts of the pending criminal case against defendant. The defendant will contribute to the costs of services rendered (co-payment) based on ability to pay or availability of third party payment.

✓ u. May travel to and from: ED/NY  SD/NY, and must notify Pretrial Services of travel plans before leaving and upon return. SD/FL

✓ v. Comply with the following additional conditions of bond: Continue to Reside At Current Address. No New Line of Credit or Bank Accounts Without Permission of Pretrial Services

40

DEFENDANT: B. VIEUX
CASE NUMBER: 26-6378-MJ-JMS
PAGE FIVE

## PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, and order of detention, as provided in 18 U.S.C. §3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. §401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. §1503 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. §1510 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. §1512 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. §1513 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. §3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

DEFENDANT: B. VIEUX

CASE NUMBER: 26-6378-MJ-JMS

PAGE SIX

## PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

## SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of seven pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

### DEFENDANT

Signed this_____ day of _____, 20____ at _____, Florida

Signed and acknowledged before me:          DEFENDANT: (Signature) _____

WITNESS: _____          Lauderhill          Florida

_____  _____
City                    State                                  City                    State

### CORPORATE SURETY

Signed this_____ day of _____, 20____ at _____, Florida

SURETY: _____                           AGENT: (Signature) _____

                                             PRINT NAME: _____

_____  _____
City                    State

### INDIVIDUAL SURETIES

Signed this ___ day of _____, 20___ at _____, Florida   Signed this ___ day of _____, 20___ at _____, Florida

SURETY: (Signature) _____      SURETY: (Signature) _____

PRINT NAME: _____              PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____       RELATIONSHIP TO DEFENDANT: _____

_____  _____            _____  _____
City                    State                                  City                    State

Signed this ___ day of _____, 20___ at _____, Florida   Signed this ___ day of _____, 20___ at _____, Florida

SURETY: (Signature) _____      SURETY: (Signature) _____

PRINT NAME: _____              PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____       RELATIONSHIP TO DEFENDANT: _____

_____  _____            _____  _____
City                    State                                  City                    State

### APPROVAL BY THE COURT

Date: _0 7 / 0 7 / 2 0 2 6____

JARED M. STRAUSS
UNITED STATES MAGISTRATE JUDGE

42

CM/ECF RESTRICTED

DEFENDANT: B. VIEUX
CASE NUMBER: 26-6378-MJ-JMS
9AGE SEVEN

### PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

### SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of seven pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

#### DEFENDANT

Signed this_____ day of _____, 20_____ at _____, Florida

Signed and acknowledged before me:

WITNESS: _____

ADDRESS: _____

_____ ZIP: _____

DEFENDANT: (Signature) _B. V_____

ADDRESS: _3315 NW 9th Ave_
_Lauderhill, Florida_ ZIP: _33312_

TELEPHONE: _305-546-7625_

#### CORPORATE SURETY

Signed this_____ day of _____, 20_____ at _____, Florida

SURETY: _____

ADDRESS: _____

_____ ZIP: _____

AGENT: (Signature) _____

PRINT NAME: _____

TELEPHONE: _____

#### INDIVIDUAL SURETIES

Signed this___ day of _____, 20___ at _____,Florida

SURETY: (Signature) _____

PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____

ADDRESS: _____

_____ ZIP: _____

TELEPHONE: _____

Signed this ___ day of _____, 20___ at _____,Florida

SURETY: (Signature) _____

PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____

ADDRESS: _____

_____ ZIP: _____

TELEPHONE: _____

Signed this___ day of _____, 20___ at _____,Florida

SURETY: (Signature) _____

PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____

ADDRESS: _____

_____ ZIP: _____

TELEPHONE: _____

Signed this ___ day of _____, 20___ at _____,Florida

SURETY: (Signature) _____

PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____

ADDRESS: _____

_____ ZIP: _____

TELEPHONE: _____

43

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Noticing FPD-FTL (ftl_ecf@fd.org), Brooke Latta
(anika.sparks@usdoj.gov, brooke.latta@usdoj.gov, caseview.ecf@usdoj.gov,
jelenia.weeks@usdoj.gov, usafls-brdkt@usdoj.gov, usafls-hqdkt@usdoj.gov,
usafls.ftlscheduler@usdoj.gov), Magistrate Judge Jared M. Strauss
(strauss@flsd.uscourts.gov)
--Non Case Participants: Federal Public Defender (fls_ecf@fd.org)
--No Notice Sent:

Message-Id:26881317@flsd.uscourts.gov
Subject:Activity in Case 0:26-mj-06378-JMS USA v. Bianca Vieux Motion to Appoint Counsel
Content-Type: text/html
```

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 7/7/2026 at 1:43 PM EDT and filed on 7/7/2026

| | |
|---|---|
| **Case Name:** | USA v. Bianca Vieux |
| **Case Number:** | 0:26−mj−06378−JMS |
| **Filer:** | Dft No. 1 − Bianca Vieux |
| **Document Number:** | 8(No document attached) |

**Docket Text:**
 **ORE TENUS MOTION to Appoint Counsel by Bianca Vieux. (rbe)**

**0:26−mj−06378−JMS−1 Notice has been electronically mailed to:**

Noticing FPD−FTL &nbsp &nbsp ftl_ecf@fd.org

Brooke Latta &nbsp &nbsp Brooke.Latta@usdoj.gov, Anika.Sparks@usdoj.gov, caseview.ecf@usdoj.gov, Jelenia.Weeks@usdoj.gov, USAFLS−BRDKT@usdoj.gov, usafls−hqdkt@usdoj.gov, USAFLS.FTLScheduler@usdoj.gov

**0:26−mj−06378−JMS−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Noticing FPD-FTL (ftl_ecf@fd.org), Brooke Latta
(anika.sparks@usdoj.gov, brooke.latta@usdoj.gov, caseview.ecf@usdoj.gov,
jelenia.weeks@usdoj.gov, usafls-brdkt@usdoj.gov, usafls-hqdkt@usdoj.gov,
usafls.ftlscheduler@usdoj.gov), Magistrate Judge Jared M. Strauss
(strauss@flsd.uscourts.gov)
--Non Case Participants: United States Pretrial, Probation and PSIunit Office (DQA)
(flsp_dqa@flsp.uscourts.gov, mia_dqa@flsp.uscourts.gov)
--No Notice Sent:

Message-Id:26881320@flsd.uscourts.gov
Subject:Activity in Case 0:26-mj-06378-JMS USA v. Bianca Vieux Motion for Bond
```
Content−Type: text/html

# U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 7/7/2026 at 1:44 PM EDT and filed on 7/7/2026

| | |
|---|---|
| **Case Name:** | USA v. Bianca Vieux |
| **Case Number:** | 0:26−mj−06378−JMS |
| **Filer:** | USA |
| **Document Number:** | 9(No document attached) |

**Docket Text:**
 **ORE TENUS MOTION for Bond by USA as to Bianca Vieux. (rbe)**

**0:26−mj−06378−JMS−1 Notice has been electronically mailed to:**

Noticing FPD−FTL &nbsp &nbsp ftl_ecf@fd.org

Brooke Latta &nbsp &nbsp Brooke.Latta@usdoj.gov, Anika.Sparks@usdoj.gov, caseview.ecf@usdoj.gov, Jelenia.Weeks@usdoj.gov, USAFLS−BRDKT@usdoj.gov, usafls−hqdkt@usdoj.gov, USAFLS.FTLScheduler@usdoj.gov

**0:26−mj−06378−JMS−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Brooke Latta (anika.sparks@usdoj.gov, brooke.latta@usdoj.gov,
caseview.ecf@usdoj.gov, jelenia.weeks@usdoj.gov, usafls-brdkt@usdoj.gov,
usafls-hqdkt@usdoj.gov, usafls.ftlscheduler@usdoj.gov), Noticing FPD-FTL (ftl_ecf@fd.org),
Magistrate Judge Jared M. Strauss (strauss@flsd.uscourts.gov)
--Non Case Participants: Federal Public Defender (fls_ecf@fd.org)
--No Notice Sent:

Message-Id:26881353@flsd.uscourts.gov
Subject:Activity in Case 0:26-mj-06378-JMS USA v. Bianca Vieux Order on Motion to Appoint
Counsel
Content-Type: text/html
```

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 7/7/2026 at 1:48 PM EDT and filed on 7/7/2026

**Case Name:**     USA v. Bianca Vieux

**Case Number:**   0:26−mj−06378−JMS

**Filer:**

**Document Number:** 10(No document attached)

**Docket Text:**
 **PAPERLESS ORDER granting [8] Motion to Appoint Counsel as to Bianca Vieux (1). Signed by Magistrate Judge Jared M. Strauss on 7/7/2026. (rbe)**


**0:26−mj−06378−JMS−1 Notice has been electronically mailed to:**

Noticing FPD−FTL     ftl_ecf@fd.org

Brooke Latta     Brooke.Latta@usdoj.gov, Anika.Sparks@usdoj.gov, Jelenia.Weeks@usdoj.gov, USAFLS−BRDKT@usdoj.gov, USAFLS.FTLScheduler@usdoj.gov, caseview.ecf@usdoj.gov, usafls−hqdkt@usdoj.gov

**0:26−mj−06378−JMS−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Noticing FPD-FTL (ftl_ecf@fd.org), Brooke Latta
(anika.sparks@usdoj.gov, brooke.latta@usdoj.gov, caseview.ecf@usdoj.gov,
jelenia.weeks@usdoj.gov, usafls-brdkt@usdoj.gov, usafls-hqdkt@usdoj.gov,
usafls.ftlscheduler@usdoj.gov), Magistrate Judge Jared M. Strauss
(strauss@flsd.uscourts.gov)
--Non Case Participants: Financial Clerk (flsd_financial@flsd.uscourts.gov), United States
Pretrial, Probation and PSIunit Office (DQA) (flsp_dqa@flsp.uscourts.gov,
mia_dqa@flsp.uscourts.gov)
--No Notice Sent:

Message-Id:26881367@flsd.uscourts.gov
Subject:Activity in Case 0:26-mj-06378-JMS USA v. Bianca Vieux Order on Motion for Bond
```
Content−Type: text/html

# U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 7/7/2026 at 1:52 PM EDT and filed on 7/7/2026

| | |
|---|---|
| **Case Name:** | USA v. Bianca Vieux |
| **Case Number:** | 0:26−mj−06378−JMS |
| **Filer:** | |
| **Document Number:** | 11(No document attached) |

**Docket Text:**
 **PAPERLESS ORDER granting [9] Motion for Bond as to Bianca Vieux (1). Signed by Magistrate Judge Jared M. Strauss on 7/7/2026. (rbe)**

**0:26−mj−06378−JMS−1 Notice has been electronically mailed to:**

Noticing FPD−FTL &nbsp &nbsp ftl_ecf@fd.org

Brooke Latta &nbsp &nbsp Brooke.Latta@usdoj.gov, Anika.Sparks@usdoj.gov, caseview.ecf@usdoj.gov, Jelenia.Weeks@usdoj.gov, USAFLS−BRDKT@usdoj.gov, usafls−hqdkt@usdoj.gov, USAFLS.FTLScheduler@usdoj.gov

**0:26−mj−06378−JMS−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-6378-MJ-STRAUSS

UNITED STATES OF AMERICA

vs                                    ORDER OF REMOVAL

BIANCA VIEUX

It appearing that in the **Eastern District of New York an Indictment** was filed against the above-named defendant, that the defendant was arrested in the Southern District of Florida and was given a hearing before a **United States Magistrate Judge at Fort Lauderdale, Florida,** which official committed the defendant for removal to the **Eastern District of New York.**

it is ORDERED AND ADJUDGED that the defendant be removed to the above-named district for trial on said charge.

And it further appearing that the defendant waived further hearing in the said removal proceedings and was held by the Magistrate Judge for removal and posted bail in the amount of $200,000 **Personal/Cash OR Corporate Surety Bond** which was approved by the United States Magistrate Judge, and it is further ORDERED that the defendant shall appear in the aforesaid district at such times and places as may be ordered by that District Court, in accordance with the terms and conditions of aforesaid bail bond furnished by the defendant, and it is further

ORDERED that the funds, plus interest, which may have been deposited on behalf of this defendant with the Clerk of the Court under Bail Reform Act be transferred to the district where removed.

DONE AND ORDERED at Fort Lauderdale, Florida this 7th day of July, 2026.

JARED M. STRAUSS
UNITED STATES MAGISTRATE JUDGE

cc: Miami, Financial